**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Whitley Rachelle Wilkins,

                Plaintiff,

                        Case No. 1:20-cv-54-MLB

v.

Wal-Mart Stores East, LP,

                Defendant.

_____/

## OPINION & ORDER

Plaintiff Whitley Rachelle Wilkins sued Defendant Wal-Mart Stores East, LP, alleging a variety of claims after she was stopped at one of its stores on suspicion of shoplifting. (Dkt. 1-1 at 4–21.) Defendant moves for summary judgment on all of Plaintiff's claims. (Dkt. 42.) The Court grants in part and denies in part, dismissing all Plaintiff's claims except her claims for assault and slander to other customers.

## I.    Background

### A.    The Court's Use of Proposed Facts and Responses

The Court draws the facts largely from the parties' submissions. In support of its motion for summary judgment, Defendant filed a statement

of material facts (Dkt. 42-7). *See* LR 56.1(B)(1), NDGa. Plaintiff responded to Defendant's statement of material facts (Dkt. 46-2).[1] *See* LR 56.1(B)(2)(a). Plaintiff also filed a separate statement of facts that she contends are material and present genuine issues for trial (Dkt. 46-3). *See* LR 56.1(B)(2)(b). Defendant responded to Plaintiff's facts (Dkt. 53), as permitted by LR 56.1(B)(3). Defendant also replied to Plaintiff's response to its statement of facts (Dkt. 54), as permitted by this Court's Standing Order (Dkt. 4 ¶ r(2)).

The Court uses the parties' proposed facts and responses as follows. When a party does not dispute the other's fact, the Court accepts it for purposes of summary judgment and cites the proposed fact and corresponding response. When one side admits a proposed fact in part,

---

[1] In many instances, Plaintiff's responses violate the Local Rules, which require that she submit "concise, nonargumentative responses" corresponding to each of Defendant's numbered undisputed material facts. LR 56.1(B)(2)(a)(1). Many of Plaintiff's responses are argumentative and do not dispute the evidence Defendant cited to support its particular fact. (*See, e.g.*, Dkt. 46-2 ¶¶ 7, 10–11, 13, 17–19, 21–22, 25, 27, 33, 35.) As explained by this Court, "a response to a statement of undisputed material facts is not an opportunity to write another brief. If the fact stated is true, admit it. If the fact is legitimately disputed, then say why, cite the evidence that supports the denial, and stop." *Furr v. Polk Sch. Dist.*, No. 4:14-CV-0082, 2015 WL 12591010, at *1 n.2 (N.D. Ga. June 5, 2015) (internal quotation marks and citation omitted), *adopted by* 2015 WL 12591009 (N.D. Ga. July 28, 2015).

the Court includes the undisputed part. When one side denies the other's proposed fact in whole or in part, the Court reviews the record and determines whether a fact dispute exists. If the denial is without merit, the Court deems the fact admitted so long as the record citation supports it. If a fact is immaterial, it is excluded.[2] If a fact is stated as an issue or legal conclusion, it is excluded. *See* LR 56.1(B)(1)(c). Where appropriate, the Court modifies one party's fact per the other's response when the latter better reflects the record. Finally, as needed, the Court draws some facts directly from the record. *See* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

As a preliminary matter, the Court resolves some broad objections. Defendant broadly objects to Plaintiff's statement of facts as not in compliance with the Local Rules because it is an alternative statement of

---

[2] Some proposed facts the Court declines to exclude on materiality grounds are not "material" as that term is generally employed in the summary judgment context. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (identifying material facts as those that "might affect the outcome of the suit under the governing law"). Some are included for background purposes or to generate context for the Court's analysis. Which facts ultimately prove material should be apparent from the analysis.

facts, rather than a statement of additional facts. (Dkt. 53 at 1–2.) The Court agrees. The Local Rules permit a respondent to submit "[a] statement of *additional* facts which the respondent contends are material and present a genuine issue for trial." LR 56.1(B)(2)(b) (emphasis added). Instead of filing a statement containing additional facts, Plaintiff essentially filed an alternative statement of facts. The Court excludes proposed facts in Plaintiff's statement of facts (Dkt. 46-3) that duplicate those in Defendant's statement of facts (Dkt. 42-7).

Defendant also broadly objects to Plaintiff's response to its statement of facts because it fails to comply with this Court's Standing Order. (Dkt. 54 at 2.) Defendant is correct. The Standing Order provides: "In addition to following the form instructions set out in Local Rule 56.1B, a party responding to a statement of material facts shall copy into its response document the numbered statement to which it is responding and provide its response to that statement immediately following." (Dkt. 4 ¶ r(2).)[3] Plaintiff did not copy into its response

---

[3] On April 16, 2021, the Court entered a revised Standing Order. (Dkt. 56.) That is the relevant Standing Order moving forward. But at the time briefing for Defendant's motion for summary judgment occurred, the Standing Order entered as Document 4 governed. Nonetheless, the paragraph at issue is the same in both.

document the numbered statement to which she was responding. (*See* Dkt. 46-2.) But Defendant, too, violated the Court's Standing Order. The Standing Order also provides: "A party that chooses to reply to a response shall copy into its reply document its original numbered statement of material fact and the opposing party's response, then provide its reply to that statement immediately following." (Dkt. 4 ¶ r(2).) In its reply to Plaintiff's response to its statement of facts, Defendant did not copy into its reply document its original numbered statement of material fact and Plaintiff's response. (*See* Dkt. 54.) The Court admonishes both parties for violating the Standing Order. The rules are pretty clear and should be followed.

## B. Facts

On June 2, 2019, Plaintiff was scanning merchandise from her cart at a self-check-out ("SCO") register at one of Defendant's stores in Atlanta, Georgia. (Dkts. 42-7 ¶¶ 2, 7; 46-2 ¶¶ 2, 7.) Defendant's Asset Protection Associate Charles Smith was watching Plaintiff scan merchandise on closed-circuit television ("CCTV") monitors in the Asset Protection Office ("AP office") and saw her under-ringing the

merchandise. (Dkts. 42-1 ¶ 3; 42-7 ¶ 8.)[4] One of Defendant's employees cancelled Plaintiff's transaction and directed her to the customer service desk. (Dkts. 42-1 ¶ 3; 42-5 at 56:18–22; 42-7 ¶ 8.)[5] After checking out at the customer service desk, Plaintiff walked towards the exit. (Dkts. 42-7 ¶ 9; 46-2 ¶ 9.) Plaintiff stopped at the exit door where one of Defendant's customer service representatives, Cynthia Cohen, was checking purchase receipts. (Dkts. 42-3 ¶ 2; 42-7 ¶ 10; 46-2 ¶ 10.) Ms. Cohen asked to see Plaintiff's receipt. (Dkt. 42-3 ¶ 2.) Plaintiff testified

---

[4] In response to Defendant's statement of facts, Plaintiff contends "[t]here is no evidence of Charles Smith observing Plaintiff scanning merchandise" and "[t]here also was no evidence of Charles Smith observing Plaintiff under-ringing merchandise." (Dkt. 46-2 ¶ 8.) That is not true. In his declaration, Mr. Smith explained that he observed on the CCTV system a female shopper (later identified to be Plaintiff) who was scanning some—but not all—of the merchandise she had in a shopping cart at a SCO register. (Dkt. 42-1 ¶ 3.) Mr. Smith said this is "a common shoplifting practice referred to as 'under-ringing' or sometimes 'skip-scanning.'" (*Id.*) The rest of Plaintiff's response does not respond to Defendant's proposed fact.

[5] As Defendant points out (Dkt. 42-7 at 3 n.1), there is a conflict in the evidence about *who* sent Plaintiff to the customer service desk. In his declaration, Mr. Smith said he contacted a customer service manager in the SCO area and asked that individual to cancel Plaintiff's transaction and direct her to the customer service desk. (Dkt. 42-1 ¶ 3.) But in Plaintiff's deposition, she testified that Mr. Smith himself directed her to the customer service desk. (Dkt. 42-5 at 56:18–22.) This conflict is immaterial to any issue on summary judgment. In any event, both parties agree one of Defendant's employees directed Plaintiff to the customer service desk.

she found nothing offensive, wrongful, or unusual about Ms. Cohen doing that. (Dkts. 42-5 at 159:14–160:3; 42-7 ¶ 12; 46-2 ¶ 12.) Ms. Cohen, however, testified by declaration that Plaintiff was very nasty, angry, loud, and used a lot of profanity. (Dkt. 42-3 ¶ 3.) Video evidence shows Plaintiff gave Ms. Cohen a piece of white paper.[6] (*See* Video 7 at 12:05:43.)

Mr. Smith testified by declaration that he was in the AP office, which is near the exit door, when he heard "a very loud voice complaining and using profanities to Ms. Cohen" so he "walked to the exit door where [he] found [Plaintiff] cursing and protesting at Ms. Cohen" as a result of her request to see Plaintiff's receipt. (Dkt. 42-1 ¶ 4; *see also* Dkts. 42-7 ¶ 14; 46-2 ¶ 14.) Defendant's Asset Protection Associate in training Maurya Rodriguez—who the parties sometimes refer to as the "lady in

---

[6] The parties dispute whether that piece of white paper was her receipt or the SCO register slip for the canceled SCO transaction. During her deposition, Plaintiff said it was the receipt. (Dkt. 42-5 at 160:4–15.) Ms. Cohen testified by declaration that Plaintiff "refused to show [her] a purchase receipt as proof of purchase of her merchandise" and instead "showed [her] a paper which was not a purchase receipt." (Dkt. 42-3 ¶ 3.) And Mr. Smith testified by declaration that Plaintiff "had shown Ms. Cohen a copy of a SCO register slip for the canceled transaction from the SCO register, but refused to show her receipt." (Dkt. 42-1 ¶ 5.) This dispute is immaterial.

the green shirt" or the "girl in green"—followed Mr. Smith out of the AP

office to the exit door. (Video 4 at 12:06:03.) Mr. Smith asked Plaintiff

for her receipt. (Dkt. 42-1 ¶ 5; *see also* Dkts. 42-7 ¶ 14; 46-2 ¶ 14.)

Plaintiff offered to let him go through the items in her shopping cart but

did not give him the receipt. (Dkts. 42-5 at 59:9–15, 67:15–21; 42-7 ¶ 19;

46-2 ¶ 19.)[7] Plaintiff accused Mr. Smith—but none of Defendant's other

employees—of racial discrimination and racial profiling. (Dkts. 42-1 ¶ 5;

42-5 at 163:9–164:2; 42-7 ¶¶ 17, 20; 46-2 ¶¶ 17, 20.)

---

[7] The Court deems Defendant's fact that Plaintiff did not give Mr.
Smith her receipt admitted for three reasons. First, Plaintiff did not
properly refute the fact. (*See* Dkts. 42-7 ¶ 19; 46-2 ¶ 19.) Second, video
evidence shows Plaintiff holding a piece of paper while she interacts with
Mr. Smith, but does not show her give that paper to Mr. Smith before the
police arrive. (Video 7 at 12:06:05–12:08:40.) Third, Plaintiff admitted
during her deposition that she did *not* give Mr. Smith her receipt. (*See,
e.g.*, Dkt. 42-5 at 67:15–68:1.)

The Court acknowledges Plaintiff sometimes now contends she
gave her receipt to Mr. Smith. (Dkt. 46-2 ¶¶ 11, 14.) The Court will not
consider this. Her citations to the record do not support her contention
that she showed her receipt to Mr. Smith; they establish only that she
showed something to Ms. Cohen, perhaps the CSO slip from her cancelled
transaction. (Dkt. 46-2 ¶¶ 11, 14 (citing Video 2 at 12:05:45; Dkt. 42-5 at
131:21–132:6).)

Plaintiff exited the store, found a police officer outside, and asked for help. (Dkts. 42-5 at 68:5–69:19; 42-7 ¶ 21; 46-2 ¶ 21.)[8] Plaintiff testified that, when she was exiting the store, Mr. Smith "put[] his hand out, at which point it inadvertently touche[d her] because that's how gravity works." (Dkts. 42-5 at 66:14–18; 42-7 ¶ 15; 46-2 ¶ 15.) She further explained: "When I'm progressing forward and you're going in the opposite direction, your hand is going to touch me. . . . I just didn't take offense to it because I thought he was just being, you know, an asshole." (Dkts. 42-5 at 66:18–23; 42-7 ¶ 15; 46-2 ¶ 15.) Plaintiff returned to the vestibule of the store with the police officer. (Dkts. 42-5 at 69:23–70:12; 42-7 ¶ 21; 46-2 ¶ 21.) Plaintiff followed the police officer into the AP office to look at the surveillance video. (Dkts. 42-7 ¶ 23; 46-2 ¶ 23.) No one prohibited Plaintiff from leaving the AP office in any way. (Dkts. 42-2 ¶

_____

[8] Plaintiff emphasizes she "only went to the police officer because the officer was already told to come by Defendant's employees." (Dkt. 46-2 ¶ 21.) That is immaterial. It does not matter who summoned the police officer *first*. What does matter, however, is that Plaintiff left the store and summoned the police officer to the scene. And that fact is not in dispute: Mr. Smith testified by declaration that Plaintiff left the store stating she was getting a police officer (Dkt. 42-1 ¶ 7), and Plaintiff testified she exited the store, saw the police officer, and "absolutely" asked the police officer to assist with the incident (Dkt. 42-5 at 68:5–69:19, 112:20–23). (*See also* Dkts. 42-7 ¶¶ 21–22; 46-2 ¶¶ 21–22.)

6; 42-7 ¶ 24; 46-2 ¶ 24.)[9]  After watching the video, Plaintiff left the AP office and videorecorded Mr. Smith with her cell phone while in the vestibule.  (Dkts. 42-5 at 150:17–21; 42-7 ¶¶ 23, 25; 46-2 ¶¶ 23, 25.) Plaintiff claims Mr. Smith pushed her as she was leaving.  (Dkts. 42-5 at 74:16–76:15, 103:18–25, 140:24–141:6; 42-7 ¶ 26; 46-2 ¶ 26.)  Plaintiff eventually exited the store with the shopping cart, put her items in her car, and returned to the store to return the shopping cart.  (Dkts. 42-7 ¶ 28; 46-2 ¶ 28.)  When Plaintiff returned to the store, she went to the customer service desk to get information about how to make a complaint. (Dkts. 42-7 ¶ 31; 46-2 ¶ 31.)  Plaintiff then left.  (Dkts. 42-7 ¶ 32; 46-2 ¶ 32.)  She called Defendant's corporate number to complain when she got home.  (Dkts. 42-7 ¶ 31; 46-2 ¶ 31.)

Defendant's Asset Protection Associate Cassandra Grandison observed the encounter and noted Plaintiff "was loudly complaining, using profanity, and accusing [Mr.] Smith of various racially motivated wrongdoing such as racially profiling her and violating her legal rights

_____

[9] Plaintiff contends she was only allowed to leave the AP office after the police officer investigated the matter and found no wrongdoing.  (Dkt. 46-2 ¶ 24.)  Plaintiff does not provide a record citation for this assertion, so the Court will not consider it.  LR 56.1(B)(2)(a)(2).

based on race." (Dkt. 42-2 ¶¶ 2–3; *see also* Dkts. 42-7 ¶ 18; 46-2 ¶ 18.) Ms. Grandison concluded Plaintiff "was angry because [Ms.] Cohen and [Mr.] Smith had asked to see her purchase receipts to confirm that she had paid for all the merchandise in her shopping cart." (Dkt. 42-2 ¶ 3; *see also* Dkts. 42-7 ¶ 18; 46-2 ¶ 18.) Plaintiff admitted she used profanity and became angry and irate. (Dkt. 42-5 at 161:7–163:8; *see also* Dkts. 42-7 ¶ 17; 46-2 ¶ 17.)

None of Defendant's employees used any profanity or abusive, rude language toward Plaintiff or in her presence. (Dkts. 42-7 ¶ 37; 46-2 ¶ 37.)[10] Mr. Smith said he did not detain Plaintiff, accuse her of shoplifting, or initiate any further investigation of the incident. (Dkts. 42-1 ¶ 5; 42-7 ¶ 14; 46-2 ¶ 14.) Plaintiff testified Mr. Smith accused her of shoplifting African American hair products. (Dkt. 42-5 at 80:14–18, 106:10–23, 107:6–10.) Ms. Grandison testified by declaration that Plaintiff was

---

[10] In her response to Defendant's statement of facts, Plaintiff says Mr. "Smith did use profanity, abusive, and rude language toward Plaintiff." (Dkt. 46-2 ¶ 37.) As support, Plaintiff cites to part of her deposition testimony. (*Id.* (citing Dkt. 42-5 at 107:1–13).) That part of her testimony does not support her assertion. (*See* Dkt. 42-5 at 107:1–13.) The Court thus deems admitted Defendant's fact that none of Defendant's employees—including Mr. Smith—used profanity or abusive, rude language toward Plaintiff or in her presence. *See* LR 56.1(B)(2)(a)(2).

never detained by any of Defendant's employees.  (Dkts. 42-2 ¶ 9; 42-7 ¶ 34; 46-2 ¶ 34.)[11]

## II.    Standard of Review

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party.  *Anderson*, 477 U.S. at 248.  And a fact is material if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case."  *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

---

[11] Specifically, she said:

> In our work as Asset Protection Associates, I and [Mr.] Smith sometimes detain shoplifters and prosecute them in accordance to Walmart policies.  We know what it is to detain a shoplifter until police officers arrive and get involved.  Throughout the entire encounter with [Plaintiff], [Plaintiff] was never detained by [Mr.] Smith, me[,] or any other Walmart associate.  We never told her she could not leave.  We never restrained her.  [Plaintiff] chose to remain in the vestibule and involve the police officer.  [Plaintiff] chose to enter the AP Office.  [Plaintiff] chose to remain in the vestibule after leaving the AP Office and on the sidewalk outside the [s]tore to castigate, criticize[,] and accuse [Mr.] Smith of racially based misconduct.

(Dkt. 42-2 ¶ 9.)

The party moving for summary judgment bears the initial burden of showing the court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A moving party meets this burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The movant, however, need not negate the other party's claim. *Id.* at 323. In determining whether the moving party has met this burden, the court must view the evidence and make all reasonable factual inferences in the light most favorable to the nonmoving party. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996) (citing *Augusta Iron & Steel Works, Inc. v. Emps. Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (per curiam)).

Once the moving party has adequately supported its motion, the nonmoving party then has the burden of showing summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Ultimately, there is no genuine dispute for trial when the

record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587. But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. The court, however, resolves all reasonable doubts about the facts in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## III. Discussion

Plaintiff brings seven claims: false imprisonment, assault, battery, tortious misconduct, slander, intentional infliction of emotional distress, and race discrimination in violation of 42 U.S.C. § 1981. (Dkt. 1-1 at 4–21.) Defendant moves for summary judgment on all claims. (Dkts. 42; 42-6.)

### A. False Imprisonment

Plaintiff alleges Defendant—specifically Mr. Smith—falsely imprisoned her. (Dkts. 1-1 at 8–10; 42-4 at 6; 42-5 at 102:19–22.) On summary judgment, Defendant addresses two encounters between Plaintiff and Mr. Smith—one when they were at the exit door before the

police officer was summoned and the other when they were in the vestibule after watching the surveillance video in the AP office. (Dkt. 42-6 at 9–10.) Plaintiff only addresses the former. (Dkt. 46 at 3–5.) By failing to address Defendant's arguments on the latter, Plaintiff effectively abandoned any claim or argument that Mr. Smith detained her when they were in the vestibule after watching the surveillance video in the AP office. *See, e.g., Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."). The Court, therefore, will only address the former encounter.

Georgia law defines false imprisonment as "the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his [or her] personal liberty." O.C.G.A. § 51-7-20. The essential elements of false imprisonment are (1) a detention (2) that is unlawful. *Smith v. Wal-Mart Stores E., LP*, 765 S.E.2d 518, 521 (Ga. Ct. App. 2014) (citing *Fields v. Kroger Co.*, 414 S.E.2d 703, 704 (Ga. Ct. App. 1992)). Defendant argues it is entitled to summary judgment on Plaintiff's false imprisonment claim because neither element is met—

that is, Plaintiff was not detained and even if she was, the detention was

both lawful and privileged.  (Dkt. 42-6 at 8–14.)

### 1.    Detention

The Court of Appeals of Georgia summarized the detention element

as follows:

> A detention need not consist of physical restraint, but may
> arise out of words, acts, gestures, or the like, which induce a
> reasonable apprehension that force will be used if [the]
> plaintiff does not submit; and it is sufficient if they operate
> upon the will of the person threatened, and result in a
> reasonable fear of personal difficulty or personal injuries.  It
> is essential, however, that the restraint be against the
> plaintiff's will; and if he agrees of his own free choice to
> surrender his freedom of motion, as by remaining in a room
> or accompanying the defendant voluntarily, to clear himself
> of suspicion or to accommodate the desires of another, rather
> than yielding to the constraint of a threat, then there is no
> imprisonment.  A person need not make an effort to escape or
> to resist until an application of open force results, thereby
> risking possible physical injury, before he can recover;
> however, an actual detention must have occurred whether
> caused by force or fear.

*Mitchell v. Lowe's Home Ctrs., Inc.*, 506 S.E.2d 381, 383–84 (Ga. Ct. App.

1998) (internal citations omitted).

The Court thoroughly reviewed the video evidence of the encounter.

To the extent the video is unambiguous and uncontroverted, the Court

views the facts in the light depicted by the video recording.  *See Mathis*

*v. Adams*, 577 F. App'x 966, 968 (11th Cir. 2014) (per curiam). To the extent the video can be interpreted to support Plaintiff's allegations, the Court draws all reasonable inferences in her favor as the nonmoving party. *See Blackston v. Shook & Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985). "[B]ut an inference based on speculation and conjecture is not reasonable." *Id.* (citing *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982)).

Video 7 provides the best view. At 12:05:43 p.m., Plaintiff gave Ms. Cohen a little white piece of paper. (Video 7 at 12:05:43.) The video is too far away to tell what the paper was, and, as explained above, the parties dispute whether it was a receipt or the SCO register slip for the canceled SCO transaction. (*See supra* note 6.) In any event, that disagreement is immaterial as to whether a detention occurred. Next, the video shows Ms. Cohen looked at the piece of paper while talking with Plaintiff. (Video 7 at 12:05:44–58.) Ms. Cohen then gave the piece of paper back to Plaintiff. (*Id.* at 12:05:59.) A few seconds later, Plaintiff grabbed her shopping cart and started wheeling it toward the exit with Ms. Cohen's help. (*Id.* at 12:06:01–03.) Plaintiff emphasizes at summary judgment that Ms. Cohen allowed her to exit. (*See, e.g.*, Dkts. 46 at 3–4;

46-1 ¶ 17.)  The video does not have sound, but it is reasonable to conclude—as Plaintiff argues—that Ms. Cohen allowed her to leave the store, after all the video shows Ms. Cohen helping Plaintiff move her shopping cart toward the exit.

Mr. Smith (and Ms. Rodriguez) then walked toward Plaintiff and Ms. Cohen.  (Video 7 at 12:06:03.)  As they approached, Plaintiff stopped walking.  (*Id.*)  At 12:06:05, Mr. Smith joined Plaintiff and Ms. Cohen at the exit door.  (*Id.* at 12:06:05.)  For roughly the next minute, Mr. Smith, Plaintiff, and Ms. Cohen talked to each other.  (*Id.* at 12:06:05–12:07:15.)  Ms. Rodriguez stood nearby.  Mr. Smith then pointed toward the exit, and Ms. Rodriguez walked out of the store (and the camera's view).  (*Id.* at 12:07:16–22.)  She left her cart and all the merchandise.  Mr. Smith, Plaintiff, and Ms. Cohen continued talking.  (*Id.* at 12:07:22–35.)

Plaintiff argues the video shows Mr. Smith blocked her exit by standing in front of her shopping cart.  (*Id.* at 4.)  It does.  (Video 7 at 12:06:05–12:07:15.)  At times, he even had his hand on the front of her shopping cart (*see, e.g.*, *id.* at 12:07:00–15) and pulled it closer to him (*see, e.g.*, *id.* at 12:07:18–22).  A reasonable jury could conclude his actions resulted in a reasonable fear on the part of Plaintiff that she was not free

to leave the store without experiencing personal difficulties. *See Fields*, 414 S.E.2d at 704–05 ("[I]t is sufficient if they operate upon the will of the person threatened[] and result in a reasonable fear of personal difficulty or personal injuries." (citation omitted)). Because the video can be interpreted to support Plaintiff's allegation, the Court draws all reasonable inferences in her favor as the nonmoving party. *See Blackston*, 764 F.2d at 1482. This is enough to raise a genuine dispute of material fact as to whether Plaintiff was detained by Mr. Smith at this particular moment.

The video also shows Mr. Smith looking through the bags in Plaintiff's shopping cart. (Video 7 at 12:07:36–12:08:06.) Plaintiff claims: "[Y]ou can see [Mr. Smith] pick up merchandise looking for something to accuse me." (Dkt. 46 at 4 (citing 46-1 ¶ 17).) While the video shows Mr. Smith looking at her merchandise, it sheds no light on whether he was looking for something upon which to level an accusation against Plaintiff. To say he was "looking for something to accuse" her of is pure speculation and conjecture. *See Prosper v. Martin*, No. 17-20323, 2019 WL 2734041, at *8 (S.D. Fla. July 1, 2019) (explaining that many of the plaintiff's assertions are based "solely on her speculative interpretation of a video"

which "provid[e] 'little value on summary judgment'"), *aff'd,* 989 F.3d 1242 (11th Cir. 2021). The undisputed evidence shows Plaintiff *allowed* Mr. Smith to go through the items in her shopping cart. (Dkts. 42-5 at 59:9–12, 67:15–18; 42-7 ¶ 19; 46-2 ¶ 19.) By doing so, she chose to surrender her freedom to exit the store. *Mitchell*, 506 S.E.2d at 384 ("[I]f he agrees of his own free choice to surrender his freedom of motion, as by remaining in a room . . . to clear himself of suspicion or to accommodate the desires of another . . . then there is no imprisonment.").

From 12:08:06 to 12:08:33 p.m., the video shows Ms. Cohen standing to the side of the exit door, Mr. Smith pacing around,[12] and Plaintiff recording on her cell phone. (Video 7 at 12:08:06–12:08:33.) After that, Plaintiff walked past Mr. Smith and Ms. Cohen and exited the store, ending the encounter. (*Id.* at 12:08:34–12:08:40.) Defendant argues "[t]he fact that Plaintiff freely walked outside the [s]tore . . . compels the conclusion that she was not 'detained.'" (Dkt. 42-6 at 9–10.) The Court agrees that the undisputed evidence shows there was no detention when she exited the store to get the police officer. But

---

[12] For a few seconds, Mr. Smith exited the view of the camera. (Video 7 at 12:08:22–28.)

Georgia law is very clear that even a brief detention is sufficient. *See* O.C.G.A. § 51-7-20 (defining false imprisonment as "the unlawful detention of the person of another, *for any length of time*, whereby such person is deprived of his personal liberty" (emphasis added)). So the fact that she was free to exit eventually would not preclude a jury from finding a prior detention.

The Court finds a genuine dispute of material fact as to whether Plaintiff was detained by Mr. Smith from 12:06:03 to 12:07:35 p.m. There is no genuine dispute of material fact, however, as to whether Plaintiff was detained by Mr. Smith during the rest of the encounter, and Defendant is entitled to summary judgment on Plaintiff's false imprisonment claim for the rest of the encounter.

### 2. Unlawfulness of the Detention

The other essential element of false imprisonment is that the detention must be unlawful. *Id.* The Court will only address the unlawfulness element for the period when there is a genuine dispute of material fact as to detention—that is, between 12:06:03 and 12:07:35 p.m. Defendant argues that, assuming there was a detention, it was not unlawful because it was a lawful warrantless arrest. (Dkt. 42-6 at 11.)

"The defense of a warrantless arrest in a false imprisonment case must show that the arrest was made on probable cause and pursuant to the appropriate exigent circumstances."[13] *Mitchell*, 506 S.E.2d at 384 (alteration adopted) (quoting *Arbee*, 463 S.E.2d at 926).

The undisputed evidence shows the existence of both probable cause and exigent circumstances. Probable cause is lacking "where a reasonable [person] is satisfied that 'the accuser had no ground for proceeding but his desire to injure the accused.'" *Id.* (quoting O.C.G.A. § 51-7-43). "What facts and circumstances *amount to* probable cause is a pure question of law." *Brown v. Winn-Dixie Atlanta, Inc.*, 389 S.E.2d 530, 532 (Ga. Ct. App. 1989) (quoting *K Mart Corp. v. Griffin*, 375 S.E.2d 257, 258 (Ga. Ct. App. 1988)). "Thus, although 'lack of probable cause shall be a question for the jury, under the direction of the court,' O.C.G.A.

---

[13] In other words,

> [t]he existence of probable cause standing alone is not a complete defense in a false imprisonment case because, even if probable cause to believe a crime has been committed exists, a warrantless arrest would still be illegal unless it was accomplished pursuant to one of the "exigent circumstances" applicable to law enforcement officers enumerated in OCGA § 17-4-20(a) or applicable to private persons as set forth in OCGA § 17-4-60.

*Arbee v. Collins*, 463 S.E.2d 922, 926 (Ga Ct. App. 1995) (citing *Haile v. Pittman*, 389 S.E.2d 564, 565 (Ga. Ct. App. 1989)).

§ 51-7-43, this is not without qualification. If the material facts are essentially undisputed, whether or not probable cause existed is for the court to determine." *See Griffin*, 375 S.E.2d at 258 (alteration adopted). The record shows Mr. Smith was motivated by a desire to protect store property. Mr. Smith observed on the CCTV system Plaintiff at a SCO register scanning some—but not all—of the merchandise she had in her shopping cart. (*See* Dkts. 42-1 ¶ 3; 42-7 ¶ 8; *see also supra* note 4.) Mr. Smith said this is "a common shoplifting practice referred to as 'under-ringing' or sometimes 'skip-scanning.'" (Dkt. 42-1 ¶ 3; *see also supra* note 4.) Mr. Smith testified by declaration that he left the AP office and joined Ms. Cohen and Plaintiff at the exit door because he heard "a very loud voice complaining and using profanities to Ms. Cohen." (Dkt. 42-1 ¶ 4; *see also* Dkts. 42-7 ¶ 14; 46-2 ¶ 14.) Once there, he "found [Plaintiff] cursing and protesting at Ms. Cohen" because of her request to see Plaintiff's receipt. (Dkt. 42-1 ¶ 4; *see also* Dkts. 42-7 ¶ 14; 46-2 ¶ 14.) Mr. Smith then asked to see Plaintiff's receipt (Dkts. 42-1 ¶ 5; 42-7 ¶ 14; 46-

2 ¶ 14), and Plaintiff refused to show it (Dkts. 42-5 at 59:9–15, 67:15–21; 42-7 ¶ 19; 46-2 ¶ 19).[14]

The Court acknowledges that Plaintiff has accused Mr. Smith of racially profiling her. *See Profiling*, Black's Law Dictionary (11th ed. 2019) (defining racial profiling as the "practice of using race . . . as a salient basis for suspicion of criminal activity"). Plaintiff argues that any desire to protect store property was a pretext for discrimination. (Dkt. 46 at 5.) The only evidence Plaintiff has to support this allegation is her own conclusory statements in her affidavit and deposition. (*See* Dkts. 42-5 at 115:6–116:2; 46-1 ¶¶ 9, 23.) They are not sufficient, as the object of Rule 56 "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). The conclusory statements in her deposition testimony are also insufficient, as the Eleventh Circuit "has consistently held that conclusory allegations without specific

---

[14] It is disputed whether Plaintiff showed her receipt to Ms. Cohen. (*See supra* note 6.) But it is undisputed that she refused to show her receipt to Mr. Smith. (*See supra* note 7.)

supporting facts have no probative value." *See Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

Apart from Plaintiff's self-serving, conclusory statements, there is simply no evidence that Mr. Smith used race as the basis for initiating an investigation and detention—if one occurred—of Plaintiff. Without more, her conclusory statements amount only to a scintilla of evidence supporting her argument, which is insufficient to avoid summary judgment. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ."); *see also id.* at 249 ("[T]he plaintiff could not rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint.'" (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968))); *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1198 (11th Cir. 1997) ("Summary judgment cannot be avoided . . . based on hunches unsupported with significant probative evidence.").

Because any detention of Plaintiff was effected by private persons, the exigent circumstances outlined in O.C.G.A. § 17-4-60 apply. That statute provides that a private person may detain "an offender if the

offense is committed in his presence or within his immediate knowledge." O.C.G.A. § 17-4-60. "The term 'within his immediate knowledge' enables a private citizen to use any of his senses to obtain knowledge that an offense is being committed." *Merneigh v. State*, 531 S.E.2d 152, 156 (Ga. Ct. App. 2000). The alleged shoplifting was committed partially in Mr. Smith's presence and partially within Mr. Smith's immediate knowledge. Earlier, Mr. Smith observed on the CCTV system Plaintiff at a SCO register scanning some—but not all—of the merchandise she had in a shopping cart. (Dkts. 42-1 ¶ 3; 42-7 ¶ 8; *see also supra* note 4.) And later, Mr. Smith heard the exchange between Ms. Cohen and Plaintiff from the AP office and joined both of them at the exit door, where he was then in the presence of Plaintiff, including during the relevant period (i.e., 12:06:03 to 12:07:35 p.m.). (Dkt. 42-1 ¶ 4; *see also* Dkts. 42-7 ¶ 14; 46-2 ¶ 14.)

Defendant's detention of Plaintiff, if any, was therefore lawful, and Defendant is entitled to summary judgment on Plaintiff's false imprisonment claim.

## B.    Assault and Battery

Plaintiff alleges Defendant's actions constituted an assault and battery.  (Dkt. 1-1 at 10–13.)  Although these two causes of action are similar and often pled together, they are distinct torts.  *See* 8 Stuart M. Speiser, et al., *American Law of Torts* § 26:1 (2021) ("Although commonly pleaded as 'assault and battery,' . . . assault and battery are two distinct causes of action."); *see also Equal Emp. Opportunity Comm'n v. Nuñez, Inc.*, No. 1:09-CV-2661, 2011 WL 13168394, at *20 (N.D. Ga. Feb. 28, 2011) (noting that some Georgia cases appear to conflate the torts of assault and battery), *adopted by* 2011 WL 13175436 (N.D. Ga. Mar. 14, 2011).  "Under Georgia law, 'an assault occurs when all the apparent circumstances, reasonably viewed, are such as to lead a person reasonably to apprehend a violent injury from the unlawful act of another.'"  *Nuñez*, 2011 WL 13168394, at *20 (alterations adopted) (quoting *Everett v. Goodloe*, 602 S.E.2d 284, 291 (Ga. Ct. App. 2004)).  "[A]n actual touching is not a necessary element of the tort of assault."  *Wallace v. Stringer*, 553 S.E.2d 166, 169 (Ga. Ct. App. 2001).  Battery, on the other hand, is generally defined as "any unlawful touching."  *Metro. Atlanta Rapid Transit Auth. v. Mosley*, 634 S.E.2d 466, 468 (Ga. Ct. App.

2006). "[A]n 'unlawful' touching is one which is 'offensive,' and an 'offensive' touching is one which proceeds from anger, rudeness, or lust." *Id.* The test is what would be offensive to an ordinary person. *Id.*

Defendant did not set forth a legal standard or present any argument or evidence on Plaintiff's assault claim in its initial brief. (Dkt. 42-6 at 14–16.) The only time Defendant mentioned the word "assault" was in one of its headings: "Plaintiff's Count II should be dismissed because there is not a genuine issue of fact to support the claim of assault and battery." (*Id.* at 14.) Although Defendant addressed Plaintiff's assault claim in its reply, that is too late. (Dkt. 52 at 6–8.) The Court refuses to consider arguments first raised in a reply. *See, e.g., Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1351 n.11 (11th Cir. 2009) (treating argument as waived where it was raised for the first time in a reply brief); *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) (per curiam) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court."); *Atkinson v. Moe's Sw. Grill*, No. 1:05-CV-3325, 2008 WL 11333556, at *6 n.4 (N.D. Ga. Dec. 12, 2008) (denying defendants' motion for summary judgment on the issue of joint and several liability because the defendants raised the argument for

the first time in their reply brief). Defendant is not entitled to summary judgment on Plaintiff's assault claim.

Defendant, however, is entitled to summary judgment on Plaintiff's battery claim. That claim stems from Mr. Smith allegedly touching her twice. (Dkt. 42-5 at 103:18–104:4.) The first alleged touching is not seen on any of the videos. Plaintiff, however, testified about it. She explained that, when she was exiting the store before the police officer was involved, Mr. Smith "put[] his hand out, at which point it inadvertently touche[d her] because that's how gravity works." (*Id.* at 66:16–18.) She testified that: "When I'm progressing forward and you're going in the opposite direction, your hand is going to touch me. . . . I just didn't take offense to it because I thought he was just being, you know, an asshole." (*Id.* at 66:18–23.) Accepting Plaintiff has raised an issue of material fact as to whether this touching occurred, it is undisputed the touching was not offensive. She admits that. Defendant is thus entitled to summary judgment on Plaintiff's battery claim based on the first alleged touch. *See Lawson v. Bloodsworth*, 722 S.E.2d 358, 359 (Ga. Ct. App. 2012) ("A cause of action for battery will lie for any unlawful touching, . . . which is offensive.").

As to the second touch, Plaintiff testified that, when she was in the vestibule exiting the store after watching the surveillance video, Mr. Smith pushed her out of the way. (Dkt. 42-5 at 75:20–24, 140:24–142:4.) Plaintiff described this touch as intentional. (*Id.* at 78:6–10.) Defendant argues that if this alleged touch occurred, it was incidental to Plaintiff pushing past Mr. Smith while leaving the vestibule with Mr. Smith's back to Plaintiff as she continued to record him with her cellphone. (Dkt. 42-6 at 15.) The Court agrees. Video evidence shows exactly that. "[W]hen uncontroverted video evidence is available, the court . . . view[s] the facts in the light depicted by the video recording." *Mathis*, 577 F. App'x at 968; *cf. Scott v. Harris*, 550 U.S. 372, 380–81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."). The video shows Mr. Smith reaching for the shopping cart

and beginning to look through one of the bags.  (Video 6 at 12:17:26–27.)
Plaintiff then pushed Mr. Smith's arm off the shopping cart and brushed
past him toward the exit door.  (*Id.* at 12:17:27–29.)  Mr. Smith backed
away from the shopping cart out of the camera's view, and Plaintiff stood
at the end of her shopping cart recording Mr. Smith with Ms. Rodriguez
and the police officer in between them.  (*Id.*)  Plaintiff walked backwards
toward the exit door while pulling her shopping cart and recording on her
cellphone.  (*Id.* at 12:17:29–34.)  The video evidence wholly contradicts
Plaintiff's version regarding this part of the encounter.  Mr. Smith did
not push her out of the way.  Indeed, if anyone pushed anyone, it was
Plaintiff pushing Mr. Smith.  Defendant is entitled to summary judgment
on Plaintiff's battery claim arising from this alleged touch.

## C.    Tortious Misconduct

Plaintiff asserts a claim of tortious misconduct against Defendant.
(Dkt. 1-1 at 13–14.)  Under Georgia law, tortious misconduct is based
upon the principle that one who owns a mercantile establishment and
sells goods owes a duty to a customer, lawfully in the store by an implied
invitation for the purpose of transacting business, to protect the customer
against the use of any unprovoked and unjustifiable opprobrious,

insulting, or abusive words by a clerk employed by him or her to deal with customers, which tend to humiliate, mortify, and wound the feelings of the customer. *Wolter v. Wal-Mart Stores, Inc.*, 559 S.E.2d 483, 485 (Ga. Ct. App. 2002) (citing *Davis v. Rich's Dep't Stores, Inc.*, 545 S.E.2d 661, 664 (Ga. Ct. App. 2001)). A claim for tortious misconduct may arise when a customer who is on the premises to transact business becomes subjected to abusive, opprobrious, insulting, or slanderous language by an employee of the store. *Id.* (citing *Carter v. Willowrun Condo. Ass'n*, 345 S.E.2d 924, 926 (Ga. Ct. App. 1986)). "This theory of liability rests not upon slander 'but on the theory that a business inviter owes a public duty to protect its invitees from abusive language and conduct.'" *Id.* (quoting *Swift v. S.S. Kresge Co.*, 284 S.E.2d 74, 75 (Ga. Ct. App. 1981)).

Plaintiff only alleges Mr. Smith engaged in tortious misconduct against her. (Dkt. 46 at 10–11.) Defendant argues there is insufficient evidence to create a genuine issue of material fact as to this claim. (Dkt. 42-6 at 16.) Correct. As explained above, the Court deemed admitted Defendant's fact that none of its employees used any profanity or abusive, rude language toward or in the presence of Plaintiff during the

encounter. (*See supra* note 10.) Accordingly, Defendant is entitled to summary judgment on Plaintiff's tortious misconduct claim.

Even if this fact was not deemed admitted, however, the Court would still find that summary judgment is appropriate for two reasons: (1) there is no evidence that Mr. Smith used opprobrious, insulting, and abusive words towards Plaintiff and (2) the undisputed evidence shows that any opprobrious, insulting, or abusive words were not "unprovoked" or "unjustifiable." When asked about her tortious misconduct claim during her deposition, Plaintiff said: "Charles follow[ed] me out of the store, raising his voice, swearing, all that kind of stuff, trying to, like, egg on the fight[.] I felt like that was completely just unbecoming of someone who is supposed to be at work." (Dkt. 42-5 at 104:5–105:9.) Plaintiff has not identified any specific language from Mr. Smith other than her testimony that she "think[s] it was something along the lines of, I will slap the shit out of you," to which she later added "or whatever the fuck he said." (*Id.* at 114:12–20, 149:9–11.) She does not know what he said. Her testimony is pure speculation, and the Eleventh Circuit has repeatedly held that speculation cannot defeat summary judgment. *See, e.g.*, *Brown v. Publix Super Mkts., Inc.*, 626 F. App'x 793, 797 (11th Cir.

2015) ("[B]ut she provided no evidence to support this claim. Such speculation, unsupported by evidence, cannot defeat summary judgment."); *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.").

Mr. Smith and Ms. Grandison both testified by declaration that none of Defendant's employees used any profanity or abusive language towards Plaintiff throughout the entire incident. (Dkts. 42-1 ¶¶ 16, 22; 42-2 ¶ 12.) Given this evidence and Plaintiff's speculative testimony about what, if anything, Mr. Smith said to her, the Court finds there is no genuine dispute of material fact. *See, e.g.*, *Adams v. Carlisle*, 630 S.E.2d 529, 540 (Ga. Ct. App. 2006) (affirming the trial court's grant of summary judgment on a tortious misconduct claim where there was a complete lack of evidence as to what comments were made to the plaintiff). It is also undisputed that Plaintiff was loud, profane, and angry during the incident. (Dkts. 42-1 ¶¶ 4–5, 7, 9–10, 18–19, 22; 42-2 ¶¶ 3, 7–8; 42-3 ¶ 3; 42-5 at 161:7–8, 162:19–163:8.) As a result, any such

words by Mr. Smith were not "unprovoked" or "unjustifiable" as required by Georgia's tortious misconduct law.[15] *Wolter*, 559 S.E.2d at 485.

### D.    Slander

Plaintiff asserts a "defamation/slander" claim against Defendant. (Dkt. 1-1 at 15–16.) Under Georgia law, a claim for defamation (whether slander or libel), requires "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication to a third party; (3) fault by the defendant amounting at least to negligence; and (4) special harm or the actionability of the statement irrespective of special harm." *Murray v. Cmty. Health Sys. Pro. Corp.*, 811 S.E.2d 531, 539 (Ga. Ct. App. 2018) (citation omitted). The statement at issue is Mr. Smith accusing Plaintiff of stealing. (Dkts. 42-5 at 106:7–23; 42-7 ¶ 38; 46-2 ¶ 38.) There is a factual dispute as to whether Mr. Smith did that. (Dkt. 42-6 at 19.) Defendant asks the Court to assume for purposes of its motion that the statement was, in fact, spoken by Mr. Smith. (*Id.* at 20.)

---

[15] Plaintiff contends Defendant is "attempt[ing] to shift the racist, abusive, insulting[,] and unprovoked conduct of their employee[] onto" Plaintiff by focusing on the fact that Plaintiff cursed. (Dkt. 46 at 10.) That is not true. The law requires that the opprobrious, insulting, or abusive words be "unprovoked" and "unjustifiable," *Wolter*, 559 S.E.2d at 485, which requires looking at the behavior of the plaintiff.

For purposes of this motion, the Court thus assumes Mr. Smith said Plaintiff was trying to shoplift items from the store.

Plaintiff claims Mr. Smith said the statement in the presence of three categories of individuals: Defendant's employees, the police officer, and customers. (Dkt. 42-5 at 106:7–108:25.) With the first category, there was no publication. To recover for slander, publication is indispensable. *See Walter v. Davidson*, 104 S.E.2d 113, 115 (Ga. 1958). "Generally, publication is accomplished by communication of the slander to *anyone* other than the person slandered." *Boyd v. Disabled Am. Veterans*, 826 S.E.2d 181, 184 (Ga. Ct. App. 2019) (quoting *Terrell v. Holmes*, 487 S.E.2d 6, 8 (Ga. Ct. App. 1997)). But an exception to the broad definition of publication exists:

> [W]hen the communication is intracorporate, or between members of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive the information, there is no publication of the allegedly slanderous material, and without publication, there is no cause of action for slander.

*Id.* (alteration adopted) (quoting *Terrell*, 487 S.E.2d at 8); *see also Scouten v. Amerisave Mortg. Corp.*, 656 S.E.2d 820, 822 (Ga. 2008) ("As subsequent cases have made clear, not all intracorporate statements come within the exception, only those statements received by one who

because of his duty or authority has reason to receive the information.").
Other than Mr. Smith, the only employees of Defendant who were
involved in the incident with Plaintiff were Ms. Cohen, Ms. Grandison,
and Ms. Rodriguez. (*See, e.g.*, Dkt. 42-2 ¶ 13.) All three of these
employees had reason to receive information about an alleged
shoplifting,[16] so the intracorporate exception applies, and there is no
publication of the alleged slanderous statement to any of Defendant's
employees. Insofar as Mr. Smith said the statement to other employees
of Defendant, the Court grants summary judgment to Defendant on
Plaintiff's slander claim.

With the police officer, there was no publication either. Plaintiff
summoned the police officer inside the store to assist with the incident.
(*See supra* note 8; *see also* Dkt. 42-5 at 68:5–69:19, 112:20–23.) While
doing so, Plaintiff told the police officer, "[W]e have a situation inside of

---

[16] As the customer service representative working at the exit door
checking receipts, Ms. Cohen had reason to receive information about an
alleged shoplifting. (Dkt. 42-3 ¶ 2.) As an asset protection associate, Ms.
Grandison had reason to receive information about an alleged
shoplifting. (Dkt. 42-2 ¶ 2.) As an asset protection associate in training,
Ms. Rodriguez had reason to receive information about an alleged
shoplifting. (*Id.* ¶ 3.) Plaintiff does not allege any other employees heard
the alleged slander.

Wal-Mart. . . . This man is trying to accuse me of stealing when I have my $100 receipt right here." (Dkt. 42-5 at 68:14–17.) In Georgia, where the person slandered repeats the statement to others, the publication of the statement by the person slandered will not support a slander action against the originator of the statement. *See, e.g.*, *Merritt v. Brantley*, 936 F. Supp. 988, 993 (S.D. Ga. 1996) (applying Georgia law and explaining that self-publication "obviously neutralizes" any showing of publication); *Sigmon v. Womack*, 279 S.E.2d 254, 257 (Ga. Ct. App. 1981) (explaining that, where the plaintiff herself informed a prospective employer of the alleged slander, it did not constitute publication by the defendant because plaintiff "libeled herself by her own voluntary action"). The Court, therefore, finds there is no publication because Plaintiff self-published the allegedly slanderous remark to the police officer.[17]

---

[17] The statement to the police officer is likely privileged as well. Once the police officer was in the store, Plaintiff explained what happened and then Mr. Smith did the same. (Dkt. 42-5 at 70:15–71:11.) Plaintiff claims Mr. Smith told the police officer that she stole. (*Id.* at 107:2–9.) Georgia law has consistently held that

> statements made in good faith pursuant to investigation by police . . . are made in the performance of a public duty and are privileged. OCGA § 51-5-7(1). If such were not the case[,] these officers would find it virtually impossible to ferret out the facts and prosecute those who have violated the criminal

Insofar as Mr. Smith said the statement to the police officer, the Court grants summary judgment to Defendant.

The third category (other customers) is a closer call. Plaintiff cannot identify any customer who heard the allegedly slanderous remark. (Dkts. 42-5 at 107:20–23; 42-7 ¶ 38; 46-2 ¶ 38.) Defendant argues Plaintiff's testimony that other customers heard the statement is speculative and insufficient to raise an issue of material fact as to publication. (Dkt. 42-6 at 20.) The Court disagrees. In *Sevcech v. Ingles Markets, Inc.*, 474 S.E.2d 4 (Ga. Ct. App. 1996), the Georgia Court of Appeals addressed the issue of store customers potentially overhearing slanderous statements. In that case, the plaintiff alleged that when he was speaking with Ingles employees in the store office they accused him,

---

laws. It is difficult at best, but the law does not put roadblocks before those who may have information and prevent the communication of it to the officers. Indeed, it is made the duty of one having such information to report it to those in authority.

*Adams*, 630 S.E.2d at 539 (quoting *Fly v. Kroger Co.*, 432 S.E.2d 664, 666 (Ga. Ct. App. 1993)). Assuming Mr. Smith told the police officer Plaintiff had shoplifted, that statement was made in good faith pursuant to an investigation by the officer. The Court, however, does not base its decision on this analysis because generally "questions of privilege are for the jury to decide." *Murray*, 811 S.E.2d at 539 (citing *Cohen v. Hartlage*, 348 S.E.2d 331, 333 (Ga. Ct. App. 1986)).

"in a loud voice, of having stolen a butane lighter and that all of the patrons at the front of the store could and did hear the accusations." *Id.* at 7 (alterations adopted). The trial court granted Ingles' motion for summary judgment upon finding "no evidence that a third party heard the alleged slanderous statements." *Id.* The appellate court reversed, ruling that a jury question remained as to whether any of the customers heard the statement:

> The record shows that an Ingles' cashier was standing nearby at the time the statements were made. The cashier stated that she heard the Ingles' managers "arguing with [the plaintiff] that he had stolen something . . . ." The evidence further showed that there was moderate to heavy traffic in the store at the time, that you could hear the commotion in the office from the cash registers, and that some of the customers standing at the registers could have observed the incident.
>
> Although there is no evidence of record that anyone other than the cashier heard the statement, viewing the facts and reasonable inferences from those facts in a light most favorable to [the plaintiff], we conclude that the trial court erred in granting summary judgment on this count.

*Id.* The court held: "Where there is evidence that allegedly slanderous statements are spoken audibly, and loud enough to be heard, a jury issue is created as to whether the statements were heard." *Id.* (citing *Walter*, 104 S.E.2d at 116).

The facts here are the same. Plaintiff testified that other customers heard Mr. Smith say Plaintiff stole. (Dkt. 42-5 at 107:6–19.) Although she was unable to identify any of these people (*id.* at 107:20–23), she said she knew they heard the statement because they gave her looks (*id.* at 108:22–109:12). Video evidence shows other customers looking at the encounter between Plaintiff and Mr. Smith. (*See, e.g.*, Video 6 at 12:17:18, 12:17:23, 12:17:30, 12:17:43, 12:17:54–12:18:04.) The video does not shed any light on *why* these other customers were looking in their direction, but because the video can be interpreted to support Plaintiff's allegations, the Court draws all reasonable inferences in her favor as the nonmoving party. *See Blackston*, 764 F.2d at 1482. Plaintiff also testified that Mr. Smith "was talking very loud[ly]" and "the vestibule has an echo." (Dkt. 42-5 at 109:2–8.) The Court finds this is enough to create a jury issue as to publication to other customers.

Overall, Defendant is entitled to summary judgment on Plaintiff's slander claim regarding Defendant's employees or the police officer. Defendant, however, is not entitled to summary judgment on Plaintiff's slander claim regarding other customers.

## E. Intentional Infliction of Emotional Distress

Plaintiff asserts a claim for intentional infliction of emotional distress. (Dkt. 1-1 at 16.) A cause of action for intentional infliction of emotional distress has four elements: (1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress. *Cottrell v. Smith*, 788 S.E.2d 772, 780 (Ga. 2016).

> [L]iability for this tort has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him [or her] to exclaim, "Outrageous!"

*Renton v. Watson*, 739 S.E.2d 19, 26 (Ga. Ct. App. 2013). "Conduct that can be characterized as merely vulgar, tasteless, rude, or insulting will not support a claim for intentional infliction of emotional distress." *Howerton v. Harbin Clinic, LLC*, 776 S.E.2d 288, 300 (Ga. Ct. App. 2015) (citing *Troncalli v. Jones*, 514 S.E.2d 478, 483 (Ga. Ct. App. 1999)). "[I]nsults, threats, indignities, annoyances, petty oppressions, or other vicissitudes of daily living" are not sufficient. *Ashman v. Marshall's of MA, Inc.*, 535 S.E.2d 265, 267 (Ga. Ct. App. 2000). Indeed, the conduct

"must go beyond all reasonable bounds of decency." *Id.* Whether certain conduct rises to the requisite level of extreme and outrageous to support a claim for intentional infliction of emotional distress is a question of law. *Cottrell*, 788 S.E.2d at 780 (citing *Blockum v. Fieldale Farms Corp.*, 573 S.E.2d 36, 39 (Ga. 2002)).

The complaint generally alleges "[t]he words and conduct" of Defendant caused her "public and private humiliation and severe emotional distress." (Dkt. 1-1 at 16.) Plaintiff specified during her deposition that her intentional infliction of emotional distress claim is based on Mr. Smith (1) touching her twice, (2) saying she stole African American hair products, (3) rummaging through the items in her shopping cart after the police officer said no crime had been committed, and (4) saying, "something along the lines of I will slap the shit out of you." (Dkt. 42-5 at 114:4–115:5; *see also* Dkts. 42-7 ¶ 39; 46-2 ¶ 39.) The Court will address each of these.

Mr. Smith's alleged conduct in touching twice Plaintiff does not rise to the requisite level of extreme and outrageous as a matter of law. As to the first allege touch, Plaintiff admitted it was "inadvertent[] . . . because that's how gravity works" and she "just didn't take offense to it."

(Dkt. 42-5 at 66:14–23.) Because the undisputed evidence shows the first touch was inadvertent and unoffensive, there is no evidence from which a jury could conclude it was intentional, reckless, extreme, or outrageous. As to the second touch, the undisputed video evidence shows it resulted from Plaintiff's actions, not Mr. Smith's actions. So this second touch cannot be the basis of an intentional infliction of emotional distress claim against Defendant.

Regarding Mr. Smith saying Plaintiff stole African American hair products, the Court again assumes he said that statement for purposes of this motion. Summary judgment is still appropriate for two reasons. First, insofar as the statement was directed to third parties (e.g., the police officer or other customers), Georgia law provides that even the most extreme and outrageous conduct will not warrant a recovery for the infliction of emotional distress if the conduct was not directed toward the plaintiff. *Kramer v. Kroger Co.*, 534 S.E.2d 446, 451–52 (Ga. Ct. App. 2000) ("[E]ven malicious, wilful [sic] or wanton conduct will not warrant a recovery for the infliction of emotional distress if the conduct was not directed toward the plaintiff." (citation omitted)). "Defamatory remarks made to others or to the public in general are classic examples of conduct

that, though harmful to the plaintiff, was directed toward the hearer of the statements, not to the plaintiff, and thus is not actionable as intentional infliction of emotional distress." *Id.* at 452 (citing *Lively v. McDaniel*, 522 S.E.2d 711, 713 (Ga. Ct. App. 1999)). Second, insofar as the statement was directed to Plaintiff, the Court finds it was not extreme and outrageous enough. *See, e.g.*, *Edmundson v. City of Atlanta*, No. 1:16-CV-04639, 2017 WL 4456892, at *7 (N.D. Ga. June 21, 2017) (finding the accusation that the plaintiff stole money "not so extreme as to be considered indecent, nor [wa]s it utterly intolerable").

Mr. Smith's decision to go through the items in Plaintiff's shopping cart does not rise to the level of "beyond all possible bounds of decency, . . . atrocious, and utterly intolerable in a civilized community." *Blue View Corp. v. Bell*, 679 S.E.2d 739, 741 (Ga. Ct. App. 2009) (quoting *Frank v. Fleet Fin., Inc. of Ga.*, 518 S.E.2d 717, 720 (Ga. Ct. App. 1999)). Plaintiff even admitted she offered to let him go through the cart (Dkt. 42-5 at 59:9–12, 67:15–18), so it appears she did not think him doing so was extreme or outrageous at the time.

Plaintiff's last basis for her claim is Mr. Smith saying, "something along the lines of I will slap the shit out of you." Assuming he said that,

45

the Court finds it does not rise to the requisite level of extreme and outrageous. *See, e.g.*, *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1309 (11th Cir. 2007) (finding the supervisor's alleged conduct, which included repeated use of profanity and various incidents of sexual harassment, was not outrageous enough to constitute intentional infliction of emotional distress under Alabama law).[18] Defendant is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim.

### F. 42 U.S.C. § 1981

Plaintiff alleges Defendant racially discriminated against her in violation of 42 U.S.C. § 1981. (Dkt. 1-1 at 18–20.) Specifically, Plaintiff contends Mr. Smith discriminated against Plaintiff based on race because he said she stole African American hair products, instead of saying she stole any of the other items in her shopping cart. (Dkts. 42-5 at 115:6–116:2; 42-7 ¶ 40; 46-2 ¶ 40.) Section 1981 "protects the equal right of all persons within the jurisdiction of the United States to make

---

[18] The Court recognizes that Alabama law does not control here. But Alabama and Georgia law on intentional infliction of emotional distress are very similar. *See id.* at 1308–09 (explaining that Alabama law requires a plaintiff to show the defendant's conduct was so outrageous that it cannot be tolerated in a civilized society).

and enforce contracts without respect to race." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474 (2006) (internal quotation marks omitted) (quoting 42 U.S.C. § 1981(a)).  The statute defines "make and enforce contracts" to "include[] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  The Supreme Court held § 1981 "offers relief when racial discrimination blocks the creation of a contractual relationship, . . . so long as the plaintiff has or would have rights under the . . . proposed contractual relationship." *McDonald*, 546 U.S. at 476.  "A plaintiff asserting a § 1981 claim ultimately must prove that the defendant failed to perform a contractual obligation as a result of intentional discrimination on the basis of race." *Slocumb v. Waffle House, Inc.*, 365 F. Supp. 2d 1332, 1337 (N.D. Ga. 2005) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)); *cf. Jackson v. Waffle House, Inc.*, 413 F. Supp. 2d 1338, 1355 (N.D. Ga. 2006) ("[A] § 1981 claim requires a showing of (1) failure to perform a contractual obligation which (2) was a result of an intention to discriminate racially.").

Defendant argues there is no evidence Plaintiff was not permitted to contract for the purchase of any merchandise by Defendant.[19] (Dkt. 42-6 at 23.) The Court agrees. "Section 1981 does not provide a general cause of action for all racial harassment that occurs during the contracting process." *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 892 (11th Cir. 2007); *see also id.* ("[T]here must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping." (quoting *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1118 (10th Cir. 2001))). "Rather, 'in the retail context, the plaintiff must demonstrate the loss of an actual contract interest.'" *Id.* (alteration adopted) (quoting *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003)). Here, Plaintiff's § 1981 claim fails because she successfully completed the transaction. Indeed, she selected her merchandise and left with it.[20] *Lopez v. Target Corp.*, 676 F.3d 1230, 1234 (11th Cir. 2012) (finding the plaintiff cannot state a

---

[19] Plaintiff did not respond to this particular argument raised by Defendant. (*See* Dkt. 46 at 13–17.)

[20] When Plaintiff exited the store for the second time, she left with the shopping cart, put the items in her car, and then returned to the store to return the shopping cart. (Dkts. 42-7 ¶ 28; 46-2 ¶ 28; *see also* Dkt. 42-5 at 77:15–18.)

§ 1981 claim because he was able to complete his transaction at the Target store and buy his desired goods); *Kinnon*, 490 F.3d at 892 (emphasizing that the plaintiff had not introduced evidence showing that she "was actually denied the ability either to make, perform, enforce, modify, or terminate a contract" on account of the defendant's conduct); *Arguello*, 330 F.3d at 359 (concluding the claim of one of the plaintiffs must fail because she successfully completed the transaction and thus cannot establish interference with an actual contract interest). Defendant is thus entitled to summary judgment on Plaintiff's § 1981 claim. *See Kinnon*, 490 F.3d at 894 (affirming the district court's entry of summary judgment because the plaintiff had not created a genuine issue of material fact as to each element of a cause of action under § 1981).

## IV.    Conclusion

The Court **GRANTS IN (LARGE) PART** and **DENIES IN (SMALL) PART** Defendant's amended motion for summary judgment. (Dkt. 42.)    Summary judgment is granted as to Plaintiff's false imprisonment, battery, tortious misconduct, slander as to Defendant's employees and the police officer, intentional infliction of emotional distress, and 42 U.S.C. § 1981 claims.  Summary judgment is not granted

as to Plaintiff's assault claim and slander claim regarding other customers.

The Court **ORDERS** this case to mediation. The parties may retain the mediator to mediate this case. The expense of a retained mediator must be paid by the parties. The parties, alternately, may request that the Court appoint a magistrate judge to conduct the mediation. The parties are not required to pay for mediation by a magistrate judge. The parties shall advise the Court of their mediation preference on or before July 16, 2021. If they elect to retain their own mediator, the parties shall identify the mediator on or before July 30, 2021. The parties must have present at the mediation a person with authority to settle this litigation. The parties shall, within five days after the mediation, notify the Court in writing whether mediation led to a settlement of this action.

The Court **STAYS** this case pending mediation. The Court **DIRECTS** the Clerk to **ADMINISTRATIVELY CLOSE** this case during the period of stay.

**SO ORDERED** this 29th day of June, 2021.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE